IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL PRESTON, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | 1:17-cv-03549 |
| v. | ) ) ) | |
| AMERICAN HONDA MOTOR COMPANY, INC., | ) ) | |
| Defendant. | ) | |

**CLASS ACTION COMPLAINT**

NOW COMES the Plaintiff, MICHAEL PRESTON and for his Complaint against Defendant, AMERICAN HONDA MOTOR COMPANY, INC., and on behalf of all other similarly situated Illinois consumers, Plaintiff states as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff, MICHAEL PRESTON, brings this matter on his own behalf and on behalf of those similarly situated against AMERICAN HONDA MOTOR COMPANY, INC., ("Honda") for its warranty breaches and violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*. As alleged herein, the vehicles purchased or leased by Plaintiff and the proposed class members are defective because of the material and/or workmanship used to coat the vehicles' electrical wiring.

2. Wiring insulation is imperative to the integrity of a vehicle's electrical system. Honda made the decision to switch to soy-based insulation to cover the subject vehicles' electrical wiring. While the material used is allegedly more environmentally friendly, when the vehicles are placed in the stream of commerce and then purchased by consumers, including Plaintiff and the class members, the soy content of the coating attracts rodents and other animals,

1

causing them to eat away at the wire coating. This causes the wires themselves to be exposed and ultimately results in vehicle malfunctions, and in some instances, a disabling of the vehicles altogether.

3. Honda has refused to warrant its vehicles when such damage occurs and declines coverage for the required repairs and/or replacement parts.

## PARTIES AND JURISDICTION

4. This Court has jurisdiction to hear this matter pursuant to 15 U.S.C. § 2310(d) and/or under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) because the matter in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, and is a class action in which Plaintiff and the proposed class members are all citizens of Illinois and therefore diverse from Defendant, a California corporation.

5. Plaintiff, MICHAEL PRESTON (hereinafter, "Plaintiff"), is an individual who was at all times relevant hereto residing in the County of Cook, State of Illinois.

6. Defendant, AMERICAN HONDA MOTOR COMPANY, INC., (hereinafter "Defendant" or "Honda"), is a foreign corporation engaged in the manufacture, sale, supply and distribution of motor vehicles and related equipment and services, such as written warranties. Defendant supplies its products and services to the public at large through a system of authorized dealerships, including the Honda dealership where Plaintiff leased his vehicle.

## GENERAL FACTUAL ALLEGATIONS

7. On or about June 23, 2015, at Muller Honda, Plaintiff leased a 2015 Honda Accord (hereinafter "Accord") manufactured and supplied by Defendant, Vehicle Identification No. 1HGCR2F80FA203311, for an agreed upon value of $25,381.28, inclusive of all collateral charges incurred at the time of purchase.

8. Plaintiff obtained his Accord for personal, family and household purposes.

9. In connection with Plaintiff's lease, Defendant issued Plaintiff written warranties, which included a three (3) year or thirty-six thousand (36,000) mile new vehicle warranty.

10. Defendant intended Plaintiff to view the fact that the Accord was "warranted" as an assurance of the Accord's quality, thereby inducing Plaintiff's lease.

11. Of course, Defendant did not completely disclose the terms of its warranty until after signing, when the full warranty booklet was provided. Those warranty terms were not assurances of quality but rather, attempts to limit warranty obligations to repair or replacement of parts defective in material and workmanship. Said warranty documents also contained various other terms not previously disclosed, negotiated or agreed to including, but not limited to, limitations on damages for breach of warranty.

12. Nonetheless, Honda's new vehicle warranty should cover electrical wiring:

**New Vehicle Limited Warranty**

**Time and Mileage Period**

This warranty begins on the date the vehicle is put into use in one of the following ways:
- The vehicle is delivered to the first purchaser by a Honda dealer.
- The vehicle is leased.
- The vehicle is used as a demonstrator or company vehicle.

Your vehicle is covered for 3 years or 36,000 miles, whichever comes first. Some parts may have separate coverage under other warranties described in this book.

**Warranty Coverage**

Honda will repair or replace any part that is defective in material or workmanship under normal use. See **Proper Operation** on page 34. All repairs/replacements made under this warranty are free of charge. The replaced or repaired parts are covered only until this New Vehicle Limited Warranty expires.

**This New Vehicle Limited Warranty Does Not Cover:**
- Normal wear or deterioration of any part.
- Cleaning and polishing.
- The adding of any fluids, unless they are needed as part of a warranty repair.
- Broken, chipped, or scratched window glass unless it is due to a defect in material or workmanship.
- Any item concerning your vehicle's general appearance that is not due to a defect in material or workmanship. Cosmetic flaws or minor damage to the body, paint, or other items may occur during manufacture or shipping of your vehicle. If you find any uncorrected flaws or damage on your new vehicle, notify the dealer as soon as possible after delivery.
- Expendable maintenance items (such as filters, or brake pads/linings) when replaced due to normal wear or customer abuse.

**Limited Warranty Coverages**
- Original equipment batteries for key fobs and remotes are covered for the first 6 months of ownership.
- Original equipment wiper blade inserts are covered for the first 6 months of ownership.
- Wheel balancing and wheel alignment are covered for the first year or 12,000 miles, whichever comes first, unless required as part of a warranty repair.
- Air conditioner refrigerant is covered for the first 2 years or 24,000 miles, whichever comes first, unless required as part of a warranty repair.

Your Warranties in Detail    9

13. On or about June 23, 2015, Plaintiff took possession of the Accord but by November of 2016, Plaintiff experienced a defect and nonconformity with the Accord that diminished its value and substantially impaired its use and value to Plaintiff.

14. While operating the Accord, Plaintiff experienced a complete loss of power in the power steering, causing the vehicle to be impossible to turn and thus rendering it inoperative on the roadway.

15. When Plaintiff took the Accord in for diagnosis, he discovered that the Accord's electrical wiring, which Honda had covered with soy-based material, had been chewed and/or eaten.

16. Honda's authorized service center informed Plaintiff the needed repairs were not covered under warranty, even though the three (3) year or thirty-six thousand (36,000) mile new vehicle warranty was still in effect.

17. By November of 2016, Honda already knew that its use of soy-based material to cover electrical wiring rendered the wiring particularly susceptible to being sought out, chewed and/or eaten by rodents and other animals.

18. In fact, Honda had begun marketing and distributing "Tape, Rodent" as a "Genuine Honda Part."

19. Despite its acknowledgement that the wire coating needed to be taped over to perhaps dissuade hungry animals, Honda still refused to cover Plaintiff's needed repairs.

20. By inducing Plaintiff's lease with warranties but then attempting to limit Honda's warranty obligations to only "repair or replacement of parts defective in material and workmanship," Defendant was required by common law and statute to perform adequate and competent repairs or replacements within a reasonable opportunity and time, as competent

4

repairs within a reasonable opportunity/amount of time is the essential purpose of warranties restricted to repair or replacement of defective parts.

21. Honda failed to do so because it simply re-installed more soy-based insulated wiring at Plaintiff's cost.

22. Plaintiff provided Honda, by bringing his vehicle to a service center within Honda's authorized dealership network, a sufficient opportunity to repair the defective condition within the Accord.

23. Despite being given a reasonable opportunity to cure said defect, Defendant failed and refused to do so and thus, the warranty failed of its essential purpose. Rather, Defendant averred that the situation was not a defect, re-installed more soy-based insulated wiring, and told Plaintiff he would have to pay for repairs out of his own pocket or make a claim under his insurance to repair the damage.

24. Defendant's failure to correct said defects violate Defendant's statutory and common law duties to Plaintiff and the expectations created by Defendant's promotional documents and warranty.

25. As a result of the ineffective repair attempts made by Defendant through its authorized dealership network, the Accord cannot be utilized as intended by Plaintiff at the time of purchase and the use and value of the Accord has been diminished and/or substantially impaired to Plaintiff.

26. Plaintiff relied on Defendant's product advertisements, written, verbal, electronic and/or otherwise, regarding the length and duration of Defendant's new vehicle warranty when deciding to purchase the subject vehicle. Plaintiff also relied on Defendant's statements or

representations of general policy concerning customer satisfaction when deciding to purchase the Accord.

27. Plaintiff has been and will continue to be financially damaged due to Defendants' conduct as described herein.

28. As a direct and proximate result of Defendant's failure to comply with its statutory written warranties, statutory obligations, and common law duties, Plaintiff has suffered damages and, in accordance with 15 U.S.C. § 2310(d), Plaintiff is entitled to bring suit for such damages and other legal and equitable relief.

## CLASS ALLEGATIONS

29. Plaintiff brings this action individually and on behalf of a class and subclass of similarly situated individuals pursuant to Rule 23 of the Federal Rules of Civil Procedure.

30. The class is defined as all persons in the State of Illinois who, in the four years prior to the filing of this Complaint: (a) purchased or leased new 2013, 2014, 2015, 2016, and 2017 model year Hondas; (b) which were manufactured using soy-based content as insulation for the vehicle's electrical wiring; and (c) can be identified as having incurred a repair related to the soy-based wiring defect (through, for example, warranty claim documents or Honda-authorized dealer service center records). The class seeks relief for breach of warranty, pursuant to Magnuson-Moss and state law.

31. The subclass is comprised of class members who purchased their vehicles in the three years prior to the filing of this Complaint, the limitations period for Illinois Consumer Fraud Act claims, as the subclass seeks relief for consumer fraud under 815 ILCS 505/2.

32. Both classes are so numerous that joinder of all members is impractical. Based upon Defendant's own published vehicle sale records, tens of thousands of consumers purchased

or leased said vehicles in the State of Illinois during the three and four-year class periods and multiple online forums and widespread media coverage details Honda owner complaints relating to wiring.

33. There are questions of law and fact common to the classes that predominate over any questions affecting only individual class members. These principal questions include: (a) whether Defendant violated the Magnuson-Moss Warranty Act or state law express and implied warranties by refusing to repair defective wiring insulation under the warranty provided at the time of sale; (b) whether the soy-based insulated wiring is defective such that Honda had a legal obligation to repair or replace such wiring under warranty; and (c) whether Honda committed unfair acts in violation of state and federal public policy by refusing to repair/replace chewed through wiring and/or installing soy-based insulated wiring in the first place.

34. Plaintiff's claims are typical of the claims for all class members, as they arise from the same operative facts and are predicated on the same legal theories.

35. There are no individual questions of fact, other than whether a class member purchased or leased one of the vehicles which contain this defect, which can be determined by a ministerial inspection of Defendant's records, warranty claims, and/or Honda-authorized service center records.

36. Plaintiff will fairly and adequately protect the interests of the class members. Plaintiff is committed to vigorously prosecuting this matter and has retained counsel experienced in handling class actions and warranty and unfair business practices claims. Neither Plaintiff nor counsel for Plaintiff have any interests that might cause them to not vigorously pursue this claim.

37. This action should be maintained as a class action as the prosecution of separate actions by individual class members would create a substantial risk of inconsistent or varying

adjudications with respect to individual class members. Furthermore, the prosecution of separate actions could result in adjudications of individual members' claims that could be dispositive of the interests of other members not parties to the adjudications or could substantially impair and/or impede the ability of such individuals to protect their interests.

38. A class action is a superior method for the fair and efficient adjudication of this controversy. There is interest in the class members to determine a uniform diminished value or reimbursed repair costs for their vehicles and forcing class members to litigate their claims individually against Honda is economically impracticable.

## **COUNT I -- VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**

39. Plaintiff reincorporates by reference all preceding paragraphs as if set forth fully in this Count.

40. The Honda vehicles purchased or leased by the class members (and their internal wiring coverings) are consumer products, as that term is defined by 15 U.S.C. § 2301(1).

41. Plaintiff and the proposed class members are consumers, as that term is defined by 15 U.S.C. § 2301(3).

42. Honda is a supplier/warrantor, as those terms are defined by 15 U.S.C. § 2301(4)-(5).

43. Honda provided a written warranty, as that term is defined under 15 U.S.C. § 2301(6), and as outlined in Defendant's New Vehicle Warranty booklet.

44. Honda also provided an implied warranty that the vehicles would be fit for the general purpose for which they were sold or leased.

45. Despite the written and implied warranties, Honda failed to remedy the defects associated with its soy-based wiring insulation and refused to cover necessary consumer repairs resulting from the material defects.

46. Honda breached its warranty obligations by failing to reimburse Plaintiff and the class members for necessary vehicle repairs proximately caused by eaten or chewed through wiring due to material and workmanship defects.

47. Honda's breach has caused Plaintiff and the class members to suffer damages even while their vehicles are allegedly covered under the New Vehicle Warranty booklet.

WHEREFORE, pursuant to 15 U.S.C. § 2310(d), Plaintiff prays for relief against Defendant for its violations of the Magnuson-Moss Warranty Act, and for this breach, Plaintiff seeks an award of diminution in value damages, incurred and/or needed costs of repair, any equitable relief to which Plaintiff may be entitled, all attorney fees, expert fees and court costs incurred during the commencement and prosecution of this matter, and all other relief deemed just and appropriate by this Court.

## COUNT II -- BREACH OF IMPLIED WARRANTY

48. Plaintiff reincorporates by reference all preceding paragraphs as if set forth fully in this Count.

49. Honda designed, manufactured, marketed, sold and warranted the vehicles leased and purchased by Plaintiff and the class members.

50. Honda implied that such vehicles were fit for the ordinary purpose for which they were to be used (*i.e.*, safe driving) and they were comprised of non-defective component materials (such as appropriate wire covering/insulation).

51. Honda's vehicles do not meet these warranties because they include soy-based insulated wiring that is defective under normal use and unfit to achieve the wiring's purpose.

52. After the insulation is eaten or chewed through, the wiring itself fails in its workmanship and can no longer sustain its typical function.

53. Honda's breach of the implied warranty has deprived Plaintiff and the class members of the benefit of their bargain.

WHEREFORE, Plaintiff prays for relief against Defendant for its breach of warranty, and for this breach, Plaintiff seeks an award of diminution in value damages, incurred and/or needed costs of repair, any equitable relief to which Plaintiff may be entitled, all attorney fees, expert fees and court costs incurred during the commencement and prosecution of this matter, and all other relief deemed just and appropriate by this Court.

### **COUNT III -- BREACH OF EXPRESS WARRANTY**

54. Plaintiff reincorporates by reference all preceding paragraphs as if set forth fully in this Count.

55. Honda made affirmations of fact to Plaintiff and the class members that Honda will repair or replace any part that is defective in material or workmanship under normal use. Honda did not exempt wiring from such warranty coverage.

56. Honda's affirmations of fact created an express warranty that its vehicles would conform to Honda's representations.

57. However, Honda breached its express warranty by equipping its vehicles with soy-based insulated wiring that is defective under normal use and unfit to achieve the wiring's purpose.

58. After the insulation is eaten or chewed through, the wiring itself fails in its workmanship and can no longer sustain its typical function.

59. The soy-based insulated wiring attracts rodents or other animals, leading to serious electrical malfunctions and rendering the wiring inoperable during the course of the Honda warranty period.

60. Honda's breach of the express warranty has deprived Plaintiff and the class members of the benefit of their bargain.

WHEREFORE, Plaintiff prays for relief against Defendant for its breach of warranty, and for this breach, Plaintiff seeks an award of diminution in value damages, incurred and/or needed costs of repair, any equitable relief to which Plaintiff may be entitled, all attorney fees, expert fees and court costs incurred during the commencement and prosecution of this matter, and all other relief deemed just and appropriate by this Court.

### COUNT IV -- VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

61. Plaintiff reincorporates all preceding paragraphs as if set forth fully in this Count.

62. When Defendant presented its warranty to Plaintiff and the class members through its duly authorized dealerships, Defendant was aware that its soy-based insulation was susceptible to being chewed and eaten by rodents and other animals.

63. Nonetheless, Defendant represented that defective parts or workmanship would be warranted, even though it did not and would not warrant the soy-based insulation problem.

64. Shortly after Defendant began using soy based insulation for its electrical wiring, Defendant began to receive complaints and requests for repairs of vehicles from a vast number of consumers that had purchased or leased Defendant's vehicles.

65. Prior to the sale of the offending vehicles to Plaintiff and the class members, Defendant was aware that the reason many of the vehicles were becoming inoperative was because the soy insulation was being chewed and eaten by rodents and other animals.

66. Despite Defendant's knowledge as aforesaid, Defendant continued to produce its vehicles in a defective state, and moreover, continued to refuse to repair or replace the defective materials. Rather, Defendant's repair facilities were instructed to advise consumers that the problem was not the result of a defect or any problem with the materials in the vehicle, and that the consumers would have to pay for their own repairs.

67. Defendant's failure to cover the expense of the repair for this defect has a widespread effect on consumers and implicates general consumer protection concerns. Defendant's vehicle defect can and has caused consumer purchasers to incur thousands of dollars in repair costs, insurance deductibles or worse, increased premiums, and diminished trade-in or resale value.

68. The fact that the vehicle contains a defect that could render a vehicle inoperable is a material fact, and had consumers been fully informed of the defective nature of these materials, they would not have purchased or leased the vehicles.

69. At the time the class vehicles were leased or sold to the Plaintiff and the class members, Defendant knew, or should have known, that the aforementioned defective condition of the vehicles existed. Defendant nonetheless represented that its warranty would cover all defects and nonconformities in the vehicle.

70. Defendant made a company-wide decision to refuse to cover under its warranty the necessary repairs caused by the wires being chewed by rodents and other animals. Defendant would not pay to replace the chewed-up wires and insulation, and repair whatever electrical

12

malfunction ensued from the wires being chewed. Rather, Defendant informed consumers that they would either have to pay for the repairs themselves or make a claim under their insurance.

71. Defendant's unfair or deceptive conduct was done with the intent that the Plaintiff and the class members rely on said representations and purchase or lease the vehicles. Defendant knew that Plaintiff and the class members may not have purchased or leased their vehicles if they knew that the vehicle was susceptible to having animals or rodents attracted to the soy-based wiring and chew the wires to the point that it would cause electrical malfunctions, and ultimately, have financial responsibility to pay for those repairs.

72. Plaintiff's act of leasing one of Defendant's vehicles that is safe, reliable, and can be used for its essential purpose implicates consumer protection concerns.

73. Defendant's unfair conduct – failing to warrant its wire insulation covering – is immoral, unethical or unscrupulous. It violates federal and state warranty policies.

WHEREFORE, pursuant to 815 ILCS 505/10, Plaintiff prays for relief against Defendant for its violations of the Illinois Consumer Fraud and Deceptive Business Practices Act and requests actual damages, punitive damages, injunctive or other equitable relief to which Plaintiff may be entitled, all attorney fees, expert fees and court costs incurred during the commencement and prosecution of this matter, and all other relief deemed just and appropriate by this Court.

          Respectfully submitted,
          **MICHAEL PRESTON**

    By:    s/ Larry P. Smith
          Attorney for Plaintiff

Dated: May 11, 2017

Larry P. Smith (Atty. No.: 6217162)
SMITHMARCO, P.C.
55 W. Monroe Street, Suite 1200
Chicago, IL 60603
Telephone: (312) 324-3532
Facsimile: (888) 418-1277
E-Mail: lsmith@smithmarco.com

Stacy M. Bardo
Bardo Law, P.C.
22 West Washington Street, Suite 1500
Chicago, Illinois 60602
Telephone: (312) 219-6980
Facsimile: (312) 219-6981
E-Mail: stacy@bardolawpc.com